**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SARAH E. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 02-0309-CG-M |
| ) | |
| BISHOP STATE COMMUNITY ) | |
| COLLEGE, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This cause is before the court on the defendant's motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, defendant's memorandum in support, plaintiff's response thereto, and defendant's reply. (Docs. 130, 131, 133, 137). Upon consideration of all matters presented, and for the reasons stated herein, the court determines that defendant's motion for judgment notwithstanding the verdict is due to be **DENIED**.

### I.     BACKGROUND

Plaintiff, Sarah Taylor, a white female, brought suit against defendant, Bishop State Community College (hereinafter "Bishop State"), alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. (Doc. 1). Plaintiff's original complaint contained four charges, three of which were eliminated upon dismissal of a previous co-defendant, the Alabama Education Association. (Doc. 34). The sole remaining count alleged a violation of plaintiff's civil rights by Bishop State under 42 U.S.C. § 1981. (Doc. 1 at 5). Under the remaining charge, Count One, plaintiff avers that "Bishop State replaced the [p]laintiff with a male African[-]American instructor who was substantially less qualified than

1

the [p]laintiff by comparison of educational credentials, teaching experience and teaching certification." Id. at 3.

Defendant employed plaintiff as a full-time history instructor beginning on or about January 11, 1999, until April 9, 2001. Id. Plaintiff testified that during her employment at Bishop State, western civilization, or world history, was her area of concentration.[1] (Trial Tr.). The record indicates that plaintiff taught twenty-seven World History courses, four Western Civilization courses, at least three United States History courses, and the Alabama History course twice. (Pl.'s ex. 6). Plaintiff developed the online Alabama History course and Western Civilization courses. (Trial Tr.). Moreover, plaintiff taught the online Alabama History course twice and the online History of Western Civilization I course once. (Pl.'s Ex. 6). Although Charles Henson, Bishop State's academic dean, testified that he received complaints about plaintiff's "unpredictable behavior," the record reflects that plaintiff received only favorable performance reviews by both students and her department chair, Al Ugoji. (Doc. 133 at 6).

Defendant hired Dr. Tim Broughton, an African-American male, in the fall semester of 2000 to serve as a full-time history instructor. (Doc. 131 at 4). Dr. Broughton worked alongside the plaintiff in the Bishop State History Department during the 2000-2001 academic year. Id. While the plaintiff taught primarily World History courses, Dr. Broughton instructed a number of courses, most of which were focused upon United States History. (Pl.'s Ex. 6). Following plaintiff's discharge, Dr. Broughton, as well as several adjunct faculty members, covered plaintiff's courses until defendant hired Ann Pond. (Doc. 131 at 4-5). Dr. Broughton covered the online courses that plaintiff had developed and taught. (Pl.'s Ex. 6).

---

[1] According to plaintiff and Dr. Timothy Broughton, Western Civilization and World History are substantively the same course. (Trial Tr.).

Plaintiff initiated this lawsuit on or about May 1, 2002. She proceeded to trial on the sole remaining claim of race discrimination based upon Bishop State's determination that plaintiff's employment would not be renewed. At the close of all of the evidence, defendant moved for a directed verdict on the basis that the plaintiff failed to establish an essential element of her claim. (Trial Tr.). Specifically, defendant argued that plaintiff did not make a showing that defendant replaced plaintiff with a less qualified black individual. Id. Defendant asserted that it hired Ann Pond, a white female, to serve as plaintiff's replacement in the fall semester of 2002. Id. Plaintiff maintained that defendant hired Dr. Broughton to replace the plaintiff. Id. The court denied defendant's motion for a directed verdict and allowed the action to go to the jury. Id. Ultimately, the jury returned a special verdict in favor of plaintiff on her racial discrimination claim and awarded the plaintiff $300,000 in damages.

## II.     LEGAL STANDARD

The standard of review governing motions for judgment as a matter of law is well-established. In considering the movant's motion for judgment as a matter of law, the court ultimately must determine whether "the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441, 1448 (11th Cir. 1991). When ruling on such motions, "the Court should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion." Michigan Abrasive Co., Inc. v. Poole, 805 F.2d 1001, 1004 (11th Cir. 1986) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969)); see also Daniel v. City of Tampa Florida, 38 F.3d 546, 549 (11th Cir. 1994) (court must view the evidence in the light most favorable to the non-moving party). "If the jury verdict is supported by substantial

evidence – that is, enough evidence that reasonable minds could differ concerning material facts – the motion should be denied. A mere scintilla of evidence in the entire record, however, is insufficient to support a verdict." U.S. Anchor Mfg. v. Rule Indus., Inc., 7 F.3d 986, 993 (11th Cir. 1993).  Thus, as the Eleventh Circuit has explained:

> The jury's verdict must stand unless there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. It is the jury's task -- not ours -- to weigh conflicting evidence and inferences, and determine the credibility of the witnesses. If reasonable jurors could reach different results, we must not second guess the jury or substitute our judgment for its judgment.

Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002) (internal quotations and citations omitted.).

## III.    ANALYSIS

Defendant contends that the court should grant defendant's motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial because plaintiff failed to establish a prima facie case of racial discrimination.  (Doc. 130 at 2).  The Eleventh Circuit has explained that a plaintiff may carry her burden of establishing a prima facie case of discriminatory discharge by showing that she is a member of a protected class, she was subjected to an adverse employment decision, and that she was discharged or replaced by a person outside of the protected class, or was discharged while a person outside of the class with equal or lesser qualifications was retained.  Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir. 1982) (citations omitted); Alexander v. Chattahoochee Valley Cmty. Coll., 325 F.Supp.2d 1274, 1281 (M.D. Ala. 2004).

Defendant claims that plaintiff failed to prove an essential element of her claim – that is, that Bishop State replaced plaintiff with a person of a minority race – by a preponderance of the evidence.  Specifically, defendant submits that plaintiff failed to meet her burden of showing she

was replaced by someone outside of her class. Moreover, defendant suggests that the plaintiff was not subject to an adverse employment decision. (Doc. 131 at 2-3).

Defendant also advances an argument, in the alternative, that even if plaintiff established a prima facie case of racial discrimination, the defendant has articulated three "legitimate, non-discriminatory" reasons for its employment action, which the plaintiff has failed to rebut. Id. at 7-9. Defendant challenges the jury's conclusion that discrimination served as a motivating factor in defendant's decision to terminate plaintiff. Id. The court addresses defendant's contentions in turn.

### 1.  Plaintiff Failed to Establish a Prima Facie Case of Racial Discrimination

#### A.  Plaintiff was Replaced by a Someone Outside of her Class

Plaintiff's complaint alleges that defendant hired Dr. Broughton, an African-American male, in advance to replace plaintiff before she obtained tenure status. (Doc. 90 at 26). At trial, plaintiff pointed out that after Bishop State decided not to renew plaintiff's employment, from summer 2001 to summer 2002, Dr. Broughton was the only full-time history instructor employed by Bishop State. (Trial Tr.). Plaintiff also indicated that "[f]or over one[]year following [p]laintiff's termination, Broughton's courseload continued the same defining characteristics of [p]laintiff's [p]osition, teaching substantially the same courses [p]laintiff taught." (Doc. 133 at 3).

According to defendant, there are two reasons why plaintiff's claim that Dr. Broughton replaced her is factually incorrect. First, Dr. Broughton worked alongside plaintiff for one academic year prior to her termination. Id. Second, Dr. Broughton's courses focus on a completely different concentration than the courses taught by the plaintiff. Id. Thus, Dr. Broughton could not have been plaintiff's replacement. Rather, defendant maintains that Anne

Pond served as plaintiff's replacement.[2]  Id.  The evidence defendant proffered to rebut plaintiff's argument includes the testimony of Marcella Sims, Bishop State's Human Resources Director, who stated that from 2001 until summer 2002, Bishop State did not hire because the State had limited funds.  Id.  In addition, Dr. Yvonne Kennedy, President of Bishop State, explicitly stated that defendant hired Ann Pond in summer 2002 to replace plaintiff.  Id.

Plaintiff submits that Bishop State's decision to replace her with Dr. Broughton is evidenced by Dr. Broughton taking on only courses previously handled by plaintiff, including on-line courses which had been developed by plaintiff and exclusively taught by her prior to her non-renewal.  Id.  More specifically, plaintiff developed and taught the online history courses for Alabama History and History of Western Civilization I.  Id.  After plaintiff's non-renewal, Dr. Broughton taught these courses for at least one year.  (Pl.'s ex. 6).  Plaintiff's exhibit 6 reveals that Dr. Broughton taught the online courses for History of Western Civilization I in the summer 2001 semester, History of Western Civilization I and Alabama History in the fall 2001 semester, History of Western Civilization I and Alabama History in the spring 2002 semester, and History of Western Civilization I in the summer 2002 semester.  Id.  Defendant responds that Dr. Broughton, as well as "a combination of instructors filled in until a replacement for the [p]laintiff's position could be hired."  (Doc. 131 at 4).  Even though other adjunct instructors did cover a portion of plaintiff's usual courses, plaintiff's exhibit 6 reflects that only Dr. Broughton

---

[2] In August of 2002, Ann Pond, a white female, was hired as a non-tenured, full-time history instructor to replace plaintiff. (Doc. 131 at 4). Mrs. Pond was of the same race and sex as the plaintiff, as well as better qualified for the position held.  Id.  Ms. Pond teaches Western Civilization courses. (Doc. 137 at 3).

assumed the responsibilities vis-a-vis online courses.[3]

In the light most favorable to the plaintiff, this court finds that there was a substantial conflict of evidence such that a clear jury issue was raised concerning whether Dr. Broughton replaced the plaintiff. Based upon the evidence presented at trial, this court cannot conclude that "the facts and inferences point so overwhelmingly in favor of the movant [] that reasonable people could not arrive at a contrary verdict." Roboserve, 940 F.2d at 1448. Because the plaintiff has presented enough evidence to demonstrate that reasonable minds could differ as to whether Dr. Broughton served as plaintiff's replacement, defendant's motion for judgment as a matter of law is due to be denied as to this element of the plaintiff's prima facie case.

### B. Plaintiff Suffered Adverse Employment Action

Defendant asserts that plaintiff failed to demonstrate any adverse employment action. (Doc. 131 at 5-6). The court acknowledges that the plaintiff in this case was a non-tenured employee; however, defendant cites no legal authority nor is this court aware of any which might suggest that involuntary separation of a non-tenured employee is not adverse. This court is guided by the Tenth Circuit's pronouncement in Meiners v. Univ. of Kan., 359 F.3d 1222 (10th Cir. 2004):

> To be an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. Sanchez v. Denver Pub. Sch., 164 F.3d 527, 533 (10th Cir. 1998). The adverse action must amount to "a significant change in employment status," such as "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Aquilino v. Univ. of Kansas, 268 F.3d 930, 934 (10th Cir. 2001) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 141 L. Ed. 2d 633,

---

[3] In referring to plaintiff's exhibit 6, please note that according to plaintiff and Dr. Timothy Broughton, Western Civilization and World History are substantively the same course. (Trial Tr.). Both Broughton and plaintiff plainly testified that the world history courses taught by plaintiff were the exact same courses, with the exact same content, and had simply been assigned a new title to conform with the course book's title. Id.

118 S. Ct. 2257 (1998)).

Id. at 1230. The court rejects the argument that involuntary separation, even "non-renewal," was not "materially adverse" to the plaintiff's job status. Accordingly, defendant's argument is unavailing.

### 2. Plaintiff Demonstrated Pretext

In the alternative, defendant contends that plaintiff failed to demonstrate that the three reasons proffered by defendant behind its decision not to renew plaintiff's employment contract were "unworthy of credence." Id. at 7. First, defendant claimed that plaintiff exhibited "unacceptable inconsistent behavior" in front of her students. (Doc. 131 at 8). "Dr. Charles Henson, Academic Dean of Bishop State, testified at trial that he received several complaints from students that felt the [p]laintiff was unapproachable." Id. Plaintiff proffered evidence to rebut testimony that she was terminated due to unprofessional conduct and inconsistent behavior. Plaintiff's evidence included Al Ugoji's testimony, which completely contradicted Dr. Henson's claims,[4] and the plaintiff's outstanding faculty and student evaluations. (Trial Tr.). Plaintiff also emphasized the absence of any support for Dr. Henson's claims in the form of a report or formal student complaint.[5] Id.; (Doc. 133 at 6).

Defendant also claimed that "the courses that were being taught by the plaintiff would no longer be a part of the curriculum at Bishop State." (Doc. 131 at 9). Defendant

---

[4] Dr. Henson testified that he received complaints from a number of students regarding the plaintiff's behavior in the classroom. Dr. Henson also stated that after receiving these complaints he instructed the students to see Mr. Ugoji and express their concerns with him. Mr. Ugoji testified that he never received those complaints. In addition, defendant failed to produce any complaints in written form.

[5] Defendant claims that "complaining students did not abide by Dr. Henson's instructions" to follow correct procedure and submit written complaints. (Doc. 137 at 6).

indicated that "[o]f the thirty-six classes taught by [p]laintiff during her time at Bishop State, twenty-seven were World History [c]lasses.  Beginning in June of 2001, [defendant] switched from offering World History courses to offering Western Civilization courses."  Thus, defendant claims, "[t]he decision not to renew the [p]laintiff's contract was not based on race, it was based on the fact that the overwhelming majority of the courses taught by the [p]laintiff would no longer be offered by Bishop State." (Doc. 131 at 8).  Although defendant neglected to raise this argument at trial, the court notes that Dr. Broughton and plaintiff testified that Western Civilization and World History are substantively the same course.  (Trial Tr.).  As reflected by plaintiff's exhibit 6, defendant continued to offer Western Civilization even after plaintiff's termination.  (Pl.'s ex. 6).

      Finally, defendant asserted that plaintiff "did not display the level of professionalism, maturity, and ethical standard expected of an instructor at Bishop State Community College." (Doc. 131 at 8).  Specifically, defendant alleged that plaintiff "spread false rumors about her colleagues." Id. at 9.  For example, defendant contends that plaintiff spread false information that Dr. Broughton did not meet certain requirements to be an instructor at Bishop State.  (Doc. 137 at 7).  Dr. Broughton admitted at trial that Al Ugoji indicated via email that Dr. Broughton might have to take more United States History and Western Civilization courses at the graduate level to satisfy these requirements.  (Trial Tr.) (Pl.'s ex. 7).  Dr. Broughton testified that "he had the classes . . . to teach at Bishop States so th[at] is not accurate," but did tell plaintiff that he needed to take more classes.  Id.   Next, defendant averred that plaintiff "spread rumors that Dr. [] Broughton was a page for Dr. Kennedy in the Alabama House of Representatives and that he often commuted back and forth from Mobile to Montgomery with Dr. Kennedy."  (Doc. 137 at 7).  Dr. Broughton indicated that he had commuted, on one occasion, with Dr. Kennedy from

9

Montgomery to Mobile while working at the Alabama House of Representatives.  Id.  The court finds that there was enough evidence that the so-called "false rumors" about Dr. Broughton were based on true events to support the jury's implied finding that this reason given by the defendant for its action was pretextual.

The court concludes that the plaintiff has provided sufficient evidence to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). The court declines to second-guess the jury in view of the conflicting evidence presented at trial.

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment notwithstanding the verdict is **DENIED**.

**DONE and ORDERED** this 30th day of March, 2007.


/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE